IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLARENCE T. COOK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | CASE NO. 2:09-CV-882-WKW [WO] |
| ) | |
| UNITED HEALTH CARE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

This case concerns the claims of two former insurance agents against the corporations for which they sold health insurance. Before the court are Defendants Coventry Health Care Inc.'s, United Healthcare, Inc.'s, and American Association of Retired Persons' motions for summary judgment (Docs. # 76, 79), which have been fully briefed. Upon consideration, the motions are due to be granted.

### I. JURISDICTION AND VENUE

Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1332 and 1441. The parties do not dispute personal jurisdiction or venue, and the court finds that adequate allegations exist in support of each.

### II. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). The party

moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324. What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; *see also Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the

outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the evidence on which the nonmoving party relies, however, "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment should be granted in favor of the defendant. *Celotex*, 477 U.S. at 323.

Thus, in cases where the evidence is admissible on its face or can be reduced to admissible form and establishes there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24.

### III. FACTS

Plaintiffs Clarence Cook and Samuel Evans were independent insurance agents who contracted with Defendants to sell health insurance policies. Plaintiffs entered into contracts with Defendant PacifiCare Life and Health Insurance Company[1] in October and November 2005. (Doc. # 79, Ex. 2, ¶¶ 7-8.) PacifiCare is now a subsidiary of Defendant United Healthcare, Inc., but at the time was an independent company. All claims against PacifiCare have been referred to arbitration pursuant to the joint stipulation of the parties, and are not presently before the court. (Docs. # 58, 59.)

Mr. Cook was an "upline" agent to Mr. Evans; that is, Mr. Cook had some supervisory authority over Mr. Evans and other agents, and held the title "Master General Agent." (Doc. # 79, Ex. 2, ¶¶ 9, 15.) In December 2005, United acquired PacifiCare and assumed its contracts with agents. (Doc. # 79, ¶¶ 4, 10.) However, when Mr. Cook's original contract expired, United refused his application to renew his contract directly with United in November 2007. (Doc. # 79, Ex. 7-K.) Also in November 2007, United accepted a similar renewal application with Mr. Evans; Mr. Evans was thus in a contractual relationship directly with United from that point until July 2008, when his application to become an "upline" General Agent was denied. (Doc. # 79, Ex. 7-Q.)

Plaintiffs' contractual relationships with Defendant Coventry Health Care (named in the Amended Complaint as "Avantra Freedom") began in November 2006. (Doc. # 78, Ex. 1, ¶¶ 18, 20.) Once again, Mr. Cook was Mr. Evans's "upline" agent. (Doc. # 78, Ex. 1,

---

[1] This entity is also referred to as PacifiCare Health Plan Administrators, Inc., but any distinction is not relevant to the disposition of the pending motion. (*See* Doc. # 58.)

¶ 18.) Coventry terminated Mr. Cook's contract, without stated cause, on May 3, 2010. (Doc. # 78, Ex. 3.) Coventry had previously terminated Mr. Evans's contract, without stated cause, effective December 31, 2007. (Doc. # 78, Ex. 6.)

Coventry sold an insurance plan known as Avantra Freedom, which is a Medicare Advantage ("MA") Plan, an alternative healthcare option available to some persons who qualify for Medicare. (Doc. # 78, Ex. A, ¶ 5.) An individual may only be enrolled in one such plan at a time, and individuals are permitted to change their MA plans during certain specified "open seasons." (Doc. # 78, Ex. A, ¶¶ 11, 12, 16.) A provision of the contract between Coventry and Plaintiffs permitted Coventry to reclaim commissions paid to agents for individuals who subsequently "rapidly disenroll[ed]" from Avantra Freedom by choosing another MA plan. (Doc. # 78, Ex. A, ¶ 16.) According to Coventry's uncontradicted evidence, substantial amounts of Mr. Cook's commissions were paid in error under this policy, and were accordingly reclaimed by Coventry through "charge-backs." (Doc. # 77, at 14.) With respect to Mr. Evans, Coventry alleges that it received multiple complaints concerning his failure to fully disclose information to clients, and that he, too, was subject to a number of charge-backs for clients who rapidly disenrolled from Coventry's policies. (Doc. # 78, Ex. A, ¶¶ 21, 23; Doc. # 77, at 10.)

AARP is also named as a Defendant in this case. Defendants' evidence, uncontradicted by Plaintiffs, is that AARP's involvement was limited to having allowed the use of its name, in exchange for royalty payments, with respect to the "Secure Horizons" policy sold by United. (Doc. # 79, Ex. 1 (Practico Aff.).) Neither Plaintiff asserts that he had

any direct contact with AARP. (Doc. # 79, Ex. 3, at 280, 391; Ex. 4, at 259-60.) The attenuated connection between Plaintiffs and AARP provides AARP with additional arguments against liability, but the court ultimately need not address those arguments given its disposition of the case.

## IV.  DISCUSSION

**A.     Clarence Cook – Judicial Estoppel**

Both Coventry and United argue that it is unnecessary to reach the merits of Mr. Cook's claims, because he is judicially estopped from asserting them by having failed to disclose them during prior bankruptcy proceedings. Judicial estoppel is a doctrine preventing a party from asserting contradictory claims in different legal proceedings. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002). For judicial estoppel to apply, the prior statements must have been made under oath in a prior proceeding, and have been "calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285.

While the second prong of the test is expressed in colorful language, judicial estoppel is often applied in circumstances such as the present one. A bankruptcy debtor has a "statutory duty to disclose all assets, or potential assets to the bankruptcy court." *Robinson*, 595 F.3d at 1274; *see* 11 U.S.C. §§ 521(1), 545(a)(7). The duty is a "continuing" one, a point which the Eleventh Circuit specifically reaffirmed earlier this year in *Robinson*. 595 F.3d at 1274.

Mr. Cook does not dispute that he petitioned for Chapter 13 bankruptcy on October 15, 2005, and that the bankruptcy forms he filed under oath required him to disclose "contingent and unliquidated claims of every nature." (Doc. # 79, Ex. 3, at 121, 132.) Mr. Cook remained in bankruptcy through April 2009, yet at no time disclosed any possible claims against any Defendant. (Doc. # 79, Ex. 3, at 152, 160, 166-67, 170-71, 255.) During the same time period, Mr. Cook undertook several actions evidencing his awareness of a dispute between himself and Defendants, including filing complaints with his congressman and Alabama state agencies, and retaining counsel. (Doc. # 79, Ex. 3, at 151, 158, 167-69, 251.)

Mr. Cook alleges that he did not take inconsistent positions under oath, because he was not aware of the claims' "exact amount," the identity of the debtor, "exactly when the debt owed him arose," and "why" it arose. (Doc. # 84, at 7.) It is implausible that Mr. Cook was not on notice of whom he had claims against, given that he had signed contracts with Defendants, and in light of the evidence that Mr. Cook undertook multiple complaints about Defendants' conduct to various authorities during his bankruptcy. Further, the bankruptcy forms are clear that there is no requirement that a debtor be aware of the precise amount of a claim, much less the exact date on which it arose, to trigger the requirement to declare the existence of a claim. Mr. Cook suggests no dates in support of his assertion that he could not have been aware of sufficient information about the claims to report them. As Defendants point out, Mr. Cook's argument is belied by his own behavior in reporting several other potential lawsuits with an "unknown" value on his disclosure forms, (Doc. # 79, Ex. 3, at

122-31), as well as his assertion in a complaint to state officials that United and Coventry owed him a specified amount of money as of July 2008. (Doc. # 79, Ex. 3, at 152, 165-66, 168-69.) In any event, Mr. Cook's position is foreclosed by *Robinson*, which held that a plaintiff in substantially the same position as Mr. Cook had taken inconsistent positions under oath. 595 F.3d at 1275. Mr. Cook does not distinguish *Robinson*,[2] and the court finds that he made prior inconsistent statements under oath by not disclosing the claims in this lawsuit in his bankruptcy case.

In order for judicial estoppel to apply, Mr. Cook's conduct also must have been intended to make a mockery of the judicial system. This is a requirement that there have been "'intentional contradictions, not simple error or inadvertence.'" *Id*. (quoting *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983)). Intent, however, may be inferred from the record. *Id*. Mr. Cook argues that he intended no mockery of the judicial system, because he was acting on his bankruptcy attorney's advice in not disclosing the claims, and because his complaints to public authorities indicate that he did not mean to conceal his claims, but rather freely made them public.

Mr. Cook's first argument is insufficient, at least in itself, to excuse the non-disclosure. The Eleventh Circuit has held that disclosure to a party's attorney, and even to the bankruptcy trustee, is insufficient to prevent a finding of judicial estoppel when a claim

---

[2] Mr. Cook argues that *Robinson* differs from this case in that the claim here was not "certain or fixed," implying that it was fixed in *Robinson*. (Doc. # 84, Ex. 8.) But the claim in *Robinson* was in the form of a pending lawsuit, the value of which is almost by definition speculative. Nor does *Robinson* indicate that its conclusion depended on the "fixed" nature of the claim in that case.

is not ultimately disclosed to the bankruptcy court. *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1295 (11th Cir. 2003). Nor does Mr. Cook's non-disclosure qualify as "inadvertent," given the definition of that word in the governing case law. *Id*. at 1295-96.

More broadly, however, it is necessary to consider whether Mr. Cook had a motive to conceal his claims against Defendants in order to secure an illicit financial gain. In *Robinson*, the court noted that no "actual fraudulent result" is required to meet this prong of the test; a "possibility of defrauding the courts" suffices. 595 F.3d at 1275. The facts in *Robinson* were different than those here in that the plaintiff in *Robinson* had actually filed a lawsuit against the defendants before her bankruptcy had been discharged, while Mr. Cook did not file this lawsuit until approximately four months after his bankruptcy had been discharged. But the improper motive possessed by the plaintiff in *Robinson* was equally possessed by Mr. Cook here. By failing to declare his claims to the bankruptcy court, and ultimately delaying the filing of the suit until after his bankruptcy was concluded, Mr. Cook prevented his bankruptcy creditors from receiving any potential value from the suit that might have been obtained had his claims been settled during the course of the bankruptcy. Further, the fact that the bankruptcy court and Mr. Cook's creditors lacked knowledge of the claims may have influenced their decisions regarding the value of Mr. Cook's estate and the details of his payment plan. Thus, Mr. Cook had sufficient motive in failing to disclose his claims against Defendants to permit a conclusion that he intended to make a mockery of the judicial system.

Finally, it is appropriate to consider additional factors in weighing the totality of the circumstances as to whether judicial estoppel should apply to bar a party's claims. Mr. Cook's disclosure of other, equally uncertain, claims (presumably through the same bankruptcy attorney) makes his explanations for failing to disclose these claims especially implausible, and increases the likelihood that an improper motivation existed. Accordingly, it is proper to apply judicial estoppel to Mr. Cook's claims against both Defendants, and the motions for summary judgment are due to be granted with respect to all Mr. Cook's claims.

**B.    Samuel Evans**

Mr. Evan's claims remain. He brings claims for breach of contract (Count I), breach of implied-in-fact contract (Count II), breach of implied covenant of good faith and fair dealing (Count III), promissory estoppel (Count IV), intentional infliction of emotional distress (Count V), and fraud (Count VI). (Doc. # 69.)

   *1.    Breach of Contract*

Under Alabama law, a successful breach-of-contract claim requires showing "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, 956 So. 2d 1135, 1139 (Ala. 2006) (internal quotation marks omitted).

Mr. Evans claims that Defendants breached his contracts with them by failing to pay him commissions owed, and "'dropping' clients/insureds during the 'lockout period'" of 4/1/07 to 11/15/07." (Doc. # 69, ¶ 28.) The "lockout period" is apparently a reference to the

period of time during which members of MA plans could not make changes to their enrollments, as opposed to the "open season" during which alterations could be made to such plans. (Doc. # 78, Ex. A, ¶¶ 11, 12, 16.)

Neither the Amended Complaint nor Mr. Evans's summary judgment brief indicates with any greater specificity the nature or amount of damages stemming from the alleged breach of contract. Defendants argue that there is insufficient evidence that any breach occurred, or that Mr. Evans suffered damages from any breach that did occur. Defendants are correct. Alabama law of considerable vintage holds that a breach of contract case based on failure to pay commissions cannot proceed without evidence "as for which . . . commissions were allowable or agreed to be paid." *Crew v. Buckeye Cotton Oil Co.*, 77 So. 23 (Ala. 1917). Coventry cites Mr. Evans's own deposition, in which he was not able to identify any individuals who were disenrolled during the "lockout" period in 2007. (Doc. # 78, Ex. C, at 95-98.) United notes that Mr. Evans did no more than make a bare assertion that AARP and United breached their contracts with him by failing to pay commissions. (Doc. # 78, Ex. C, at 257.)

In his summary judgment briefing, Mr. Evans cites no evidence that establishes any breach of contract on the part of Defendants, or that establishes the amount of damages he would be due for such a breach. He argues that he is owed certain unspecified additional discovery from Defendants, and that such discovery is required in order to fully make his case. Since the filing of Mr. Evans's brief, however, the discovery period has closed, without Mr. Evans having filed any motions to compel or otherwise notifying the court that

11

Defendants have failed to comply with their discovery obligations. *See, e.g.*, Fed. R. Civ. P. 56(f). Nor has Mr. Evans offered any supplemental briefing with additional evidence that may have been received late in the discovery process, despite being invited to submit such material by the court. (*See* Doc. # 92.) Accordingly, Mr. Evans has not supported his claim for breach of contract, and the motions for summary judgment are due to be granted.

### 2. *Implied-in-Fact Contract Claim*

Mr. Evans's next three counts are essentially attempts to recover damages stemming from the same set of facts under somewhat different legal theories.

Under Alabama law, claims for breach of contract and for breach of an implied-in-fact contract "are generally incompatible." *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996). When an express written contract between the parties exists regarding "the same subject matter," a claim based on an implied-in-fact contract is inappropriate. *Id*. There were indisputably express contracts between Defendants and Mr. Evans, and Mr. Evans makes no argument as to why this doctrine does not bar his claim for breach of an implied-in-fact contract. Accordingly, the motions for summary judgment are due to be granted on this claim.

### 3. *Breach of Implied Covenant of Good Faith and Fair Dealing*

Under Alabama law, there is not a free-standing contractual cause of action for "bad faith" or failure to act in good faith, absent a more specific breach of contract. *Lake Martin/Ala. Power Licensee Ass'n v. Ala. Power Co.*, 601 So. 2d 942, 945 (Ala. 1992). Mr.

Evans does not explain how this count survives given that legal doctrine. The motions for summary judgment are due to be granted on this claim.

### *4.     Promissory Estoppel*

As with a claim for breach of an implied-in-fact contract, a promissory estoppel claim "cannot be utilized to create primary contractual liability where none would otherwise exist." *Bates v. Jim Walter Res., Inc.*, 418 So. 2d 903, 905 (Ala. 1982). In other words, where an express contract on the same subject matter exists and has not been breached, promissory estoppel cannot function to create liability.

Moreover, even if this doctrine did not suffice to bar the promissory estoppel or implied-in-fact contract claims, Mr. Evans's failure to adduce any specific evidence of representations made by Defendants, relied upon by him, and subsequently not kept by Defendants would doom these claims. The motions for summary judgment on the promissory estoppel claim are due to be granted.

### *5.     Intentional Infliction of Emotional Distress*

A claim for intentional infliction of emotional distress ("IIED") requires a showing that a defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal quotation marks omitted). In 2000, the Alabama Supreme Court noted that it had only recognized the tort (also known as "outrage") as existing in three narrowly delineated factual circumstances, *id.*, none of which is similar to the factual background of this case.

Mr. Evans has submitted no evidence from which a jury could find either that any conduct by Defendants was "extreme or outrageous," or that he was caused the requisite level of emotional distress by such conduct. On this issue, his summary judgment brief contains bare assertions and boilerplate repetition of the Amended Complaint, rather than any argument or evidence. The motions for summary judgment are due to be granted with respect to the IIED claim.

### 6. *Fraud*

Mr. Evans's fraud claim appears to rest on two bases (a third paragraph concerning the fraud claim in the Amended Complaint refers to Mr. Cook alone). First, he alleges that Defendants "fired" him "ostensibly for matters related to a second background investigation, when a previous background investigation revealed the same information." (Doc. # 69, ¶ 38.) Thus, the firing on that basis was a mere "ruse" to illegitimately retain commissions. Second, Mr. Evans is said to have sought information concerning the number and identity of clients who were dropped during the "lockout" period, but did not receive such information.

In Alabama, the elements of fraud are "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003) (internal quotation marks omitted).

The claim concerning the background check fails, because, even assuming that Defendants lied about their reasons for firing Mr. Evans, it is unclear what that statement was

"material" to, or how Mr. Evans would have "relied" on it. Mr. Evans does not dispute that his contracts were terminable at will by Defendants, so a false statement about the reason for termination is irrelevant. (Doc. # 78, Ex. C, at 41.) Further, Mr. Evans does not dispute that he authorized the background checks, and provides no evidence from which a jury could conclude that the reasons given for the termination of his contract were untrue in the first place.

The second fraud claim appears to be one for fraudulent suppression, which does not require an affirmative misrepresentation, but rather "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result." *Waddell & Reed*, 875 So. 2d at 1161 (internal quotation marks omitted).

Mr. Evans asserts that he requested information regarding dropped clients from Defendants, but did not receive it. Even assuming all the other elements of the claim are met, there is no explanation of how he was induced to act or refrain from acting by the withholding of this information, or what damages were suffered as the result of not receiving the information. Essentially, Mr. Evans alleges as the basis for all his claims that Defendants improperly failed to credit him with commissions due for the policies of dropped clients. Any damages he might have suffered resulted from such improper calculation of his commissions; they did not result from the subsequent refusal of Defendants to give him

information about particular dropped clients. Thus, he has not stated a claim for fraudulent suppression.

Finally, Mr. Evans does not rebut Defendants' contention that both the IIED and fraud claims are barred, because Alabama law does not generally permit tort claims to arise from failure to perform a contractual obligation. *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Natural Res.*, 986 So. 2d 1093, 1130 (Ala. 2007). While tort claims "can" arise from "subsequent events" related to contract claims, *id.*, Mr. Evans's fraud claims are little more than a re-packaging of his breach-of-contract claims. For this additional reason, they cannot survive summary judgment.[3]

### *7.     Discovery*

Mr. Evans's summary judgment brief closes by again suggesting that additional discovery is required before his claims can be fairly ruled upon. For the reasons given earlier with respect to the breach-of-contract claim, these vague assertions are insufficient to merit keeping this case alive. No motions to compel or other suggestions that Defendants have not complied with their discovery obligations have been filed.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' motions for summary judgment (Docs. # 76, 79) are GRANTED, and this case is DISMISSED with prejudice. A separate final judgment will be issued.

---

[3] Having found that the fraud claim is subject to dismissal on these bases, it is unnecessary to rule on Defendants' additional argument that the fraud claim is barred by the statute of limitations.

It is further ORDERED that Defendant Coventry's motion to strike (Doc. # 89) various evidence propounded by Plaintiffs is GRANTED.[4]

DONE this 10th day of September, 2010.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[4] The evidence is unauthenticated, or, in one case, hearsay, and would not be admissible at trial. Fed. R. Civ. P. 56(c); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783 (11th Cir. 2004), *abrogated on other grounds by Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258 n.7 (11th Cir. 2010). The court notes, however, that the stricken evidence appears to be of marginal relevance and would not suffice to save either Plaintiff's claims.